UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

HUGH HERNDON,                                 Case No. 1:15-cv-751

       Plaintiff,                             Judge Timothy S. Black

vs.

U.S. BANCORP FUND
SERVICES, LLC, *et al.*,

       Defendants.

**ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. 31)**

This civil action is before the Court regarding Defendants' motion for summary judgment (Doc. 31) and responsive memoranda (Docs. 34, 42).

**I.      BACKGROUND**

Plaintiff Hugh Herndon worked as a Business Development Officer ("BDO") for Defendant U.S. Bancorp Fund Services, Inc. ("U.S. Bank") from January 2005 through November 27, 2013. (Doc. 31, at 9). Plaintiff's immediate supervisor for his entire tenure with U.S. Bank was Defendant Robert Kern. As a BDO, Plaintiff was responsible for managing ongoing relationships with current U.S. Bank account holder customers as well as identifying and developing new customer relationships. (*See* Doc. 26-2). One of the key components of a BDO's job is extensive travel. Accordingly, U.S. Bank assigns all BDOs a corporate credit card for use on travel expenses such as transportation, hotel accommodations, and food. (Doc. 26, at 12).

1

One of the job requirements of a U.S. Bank BDO is that he or she must comply with the U.S. Bank "Code of Ethics." (Doc. 26-2). The Code of Ethics contains a section outlining the responsibilities of U.S. Bank employees who have been issued a corporate credit card. (Doc. 26-4). The Code states that a corporate credit card is only to be used for business-related expenses. (*Id.* at 1). To ensure compliance with this rule, the Code also requires that all employees issued a corporate credit card fill out and submit "travel and expense reimbursement forms" (referred to as "expense reports" throughout this opinion) itemizing the purchases made with the card. (*Id.*). The Code of Ethics states that a failure to submit expense reports in a timely manner can result in the cancellation of the corporate credit card and other disciplinary measures, including termination. (*Id.* at 2).

Around the time Plaintiff began working for U.S. Bank, he was diagnosed with Attention Deficit Hyperactivity Disorder (ADHD). (Doc. 26, at 11). ADHD is a neurodevelopmental disorder that causes individuals to suffer from symptoms related to inattention. The American Psychiatric Association lists nine symptoms of inattention problems suffered by individuals with ADHD:

- Often fails to give close attention to details or makes careless mistakes in schoolwork, work, or other activities
- Often has difficulty sustaining attention in tasks or play activities
- Often does not seem to listen when spoken to directly
- Often does not follow through on instructions and fails to finish schoolwork, chores, or duties in the workplace (not because of oppositional behavior or failure to understand instructions)
- Often has difficulty organizing tasks and activities
- Often avoids, dislikes, or is reluctant to engage in tasks that require sustained mental effort (such as schoolwork or homework)

2

- Often loses things necessary for tasks or activities (for example, toys, school assignments, pencils, books, or tools
- Often is easily distracted by extraneous stimuli
- Often is forgetful in daily activities

(Doc. 26-11, at 3–4). Plaintiff did not inform U.S. Bank of his ADHD diagnosis or request any accommodation for the disorder at the time he was hired. (Doc. 26, at 11).

Plaintiff fell behind on submitting his expense reports early on in his employment at U.S. Bank. (*Id.* at 13). Starting in 2008, Robert Kern brought the issue to Plaintiff's attention and discussed rectifying the problem. (*Id.*). Plaintiff's failure to file expense reports in line with U.S. Bank policy continued, and, on January 11, 2010, Robert Kern sent Plaintiff an email formally disciplining Plaintiff for his conduct and temporarily closing his corporate credit card. (Doc. 26-5). Kern sent Plaintiff another email on January 14, 2010 putting forth a series of suggestions regarding how Kern and U.S. Bank could work together to ensure that expense reports were submitted on a timely basis in the future. (Doc. 26-6). Plaintiff had not informed U.S. Bank of his ADHD diagnosis at this point.

In early 2010, Kern's administrative assistant, Deb Grow, was assigned the task of assisting Plaintiff with filing his expense reports. While Ms. Grow was able to submit some reports on Plaintiff's behalf, the problems with late or unsubmitted expense reports continued. Ms. Grow and Defendants assert that Ms. Grow was unable to completely resolve Plaintiff's expense report problems because Plaintiff would not send Ms. Grow copies of travel expense receipts that were essential to filling out the reports. (Doc. 31, at 16; Doc. 29, at 10). Plaintiff asserts that Ms. Grow did receive most major receipts

3

through email, that she could have completed Plaintiff's expense reports without his active assistance, and that Ms. Grow's insistence that she required receipts directly from Plaintiff was incorrect and reflected an unwillingness to accommodate him. (Doc. 34, at 5; Doc. 26, at 21).

Robert Kern met with Plaintiff again on September 1, 2010 to discuss Plaintiff's continuing failure to submit expense reports. At this time, Plaintiff informed Kern that he was diagnosed with ADHD, that he was taking medication for the disorder, and that his ADHD was impairing his ability to properly submit the reports.[1] No additional accommodations (other than the assistance from Deborah Grow) were implemented to assist Plaintiff with filing his expense reports at that time. This meeting was memorialized in a U.S. Bank "significant event form" which was kept on file. (Doc. 26-9).

Plaintiff's failure to submit expense reports on time continued, and twice in October 2010 Defendants expressed their concerns to Plaintiff regarding the failure to submit reports. Each of these conversations was memorialized in a significant event form. (Docs. 26-10, 26-12). Plaintiff was again warned that a failure to complete and submit his expense reports was a violation of the U.S. Bank Code of Ethics.

Although Plaintiff did not rectify his failure to complete and submit his expense reports properly, there were no discussions on the matter between late 2010 and mid-2013. The issue returned to the attention of U.S. Bank on July 29, 2013, when Robert

---

[1] Plaintiff disputes that this incident was the first time Robert Kern was informed of his ADHD diagnosis. However, Plaintiff agrees that this incident was the first time he attributed his failure to submit expense reports to his ADHD. (Doc. 26, at 22).

4

Kern was informed that Plaintiff's corporate credit card account had a significant past due balance. (Doc. 26-18). This prompted Kern to once again reach out to Plaintiff to inquire about Plaintiff's failure to submit expense reports. (Doc. 31-1).

In early August 2013, two HR managers for U.S. Bank recommended that Plaintiff apply for intermittent FMLA leave as another accommodation for his ADHD. Plaintiff contacted U.S. Bank's 3rd party FMLA administrator, who requested that Plaintiff have his doctor complete a "certificate of health care provider form" to facilitate his being granted intermittent leave. (Doc. 26-20). Plaintiff never filled out or submitted this required paperwork, and so his request for intermittent FMLA leave was denied. (Doc. 26-23).

Robert Kern issued a "final written warning" to Plaintiff regarding his expense accounts on August 21, 2013. (Doc. 26-14). Plaintiff at the time had an overdue balance of $6,975.25 on his card, had included a charge for the same flight on two separate expense reports, and had failed to expense 27 items. (*Id.*). Plaintiff responded to the final written warning with an email reiterating his position that the responsibility for submitting a BDO's expense reports should be assigned to support staff. (Doc. 26-15).

Ultimately, Plaintiff was terminated on November 27, 2013. The outstanding issues with Plaintiff's corporate credit card balance and lack of expense accounts had not been resolved by the time Plaintiff was terminated.

Plaintiff filed this civil action on November 20, 2015. Plaintiff's complaint raises the following claims against Defendants: (1) Interference with Plaintiff's taking FMLA leave, (2) Retaliation against Plaintiff for attempting to take FMLA leave, (3) Failure to

5

accommodate in violation of Ohio Revised Code § 4112 *et seq.*, (4) Retaliation in violation of Ohio Revised Code § 4112 *et seq.*, (5) Discrimination due to disability in violation of Ohio Revised Code § 4112 *et seq.* (Doc. 1). Following discovery, Defendants filed the instant motion for summary judgment.

## II. STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323. All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (1986).

## III. ANALYSIS

**A.  Plaintiff's failure to accommodate claim raises a genuine dispute of material fact sufficient to survive a motion for summary judgment.**

Plaintiff's complaint alleges that Defendants failed to accommodate his disability in violation of Ohio Revised Code § 4112, *et seq.* (Doc. 1, at 7). To prevail on this

6

claim, Plaintiff must prove that (1) he is disabled within the meaning of the ADA; (2) he is otherwise qualified for the position, with or without reasonable accommodation; (3) U.S. Bank knew about or had reason to know about his disability; (4) he requested an accommodation; and (5) the employer failed to provide the necessary accommodation. *Judge v. Landscape Forms, Inc.,* 592 Fed.Appx. 403, 407 (6th Cir.2014). Therefore, summary judgment in favor of Defendants is appropriate if Defendants can evidence that there is no genuine dispute of material fact that one of these factors was not met.

For the purposes of this summary judgment motion, Defendants do not dispute that Plaintiff was disabled within the meaning of the ADA, that Defendants knew about Plaintiff's disability, or that Plaintiff requested an accommodation. Defendants argue that Plaintiff's requested accommodation, which was for an administrative assistant to prepare and submit his expense reports without his active input, was unreasonable, and that Defendants reasonably accommodated Plaintiff by providing him an administrative assistant who could help him submit his reports so long as he gave paper copies of receipts to the assistant.

Viewing the facts of this case in the light most favorable to Plaintiff, a reasonable jury could conclude that Plaintiff's request to have an administrative assistant submit his expense reports, without his needing to personally provide receipts, was reasonable. Defendants claim that Deborah Grow, the administrative assistant assigned to assist Plaintiff in filing his expense reports, could not file complete expense reports because she did not have copies of receipts reflecting key travel expenses from Plaintiff, namely hotel stays. (Doc. 31, at 16). Deborah Grow corroborates this argument through her

7

deposition testimony. (Doc. 29, at 10). However, Plaintiff claimed during his deposition that Ms. Grow was automatically receiving all major receipts, including receipts from hotel stays, via an automatic email system. (Doc. 26, at 21). Plaintiff alleges that Ms. Grow therefore had all the information required to complete his expense reports, but that she refused to do so without paper receipts from Plaintiff, not out of any necessity, but merely because that was her standard method of processing BDO expense reports. (Doc. 34, at 6).

The parties' assertions about whether Deborah Grow was receiving copies of necessary receipts without Plaintiff's active input are conflicting, and will be an issue to be determined by a jury as the finder of fact. Should the jury determine that Ms. Grow was receiving receipts as alleged by Plaintiff, it would not be unreasonable for the jury to conclude that Plaintiff's requested accommodation of having an administrative assistant process his expense reports, without his active input, was a reasonable accommodation.

Even were Plaintiff's requested accommodation found to be reasonable, that does not necessarily mean he is entitled to recovery. Plaintiff is entitled to a reasonable accommodation for his disability, not the reasonable accommodation of his choosing. *Trepka v. Bd. of Educ.*, 28 F. App'x 455, 459 (6th Cir. 2002) (holding that an employer does not fail to provide a reasonable accommodation when there is more than one accommodation, and the employer chooses an accommodation other than the accommodation that the employee prefers). Defendants argue they offered seven separate reasonable accommodations to Plaintiff that would have given Plaintiff the assistance he needed to complete his expense reports. (Doc. 31, at 20–25). However,

8

each of these accommodations ultimately required Plaintiff to gather and submit individual receipts for travel expenses to an administrative assistant. Were the jury to determine that Defendants were in fact receiving all the information needed to process Plaintiff's expense reports, but refused to do so merely due to a strict adherence to traditional practices, the jury could reasonably conclude that none of Defendant's proposed accommodations were reasonable because they all required Plaintiff to act in a way that caused him suffering due to his disability for no necessary reason. Therefore, this matter cannot be resolved by the Court at this time prior to a jury's conclusions regarding key disputed facts.

Accordingly, Defendants' motion for summary judgment on Plaintiff's claim of failure to accommodate is denied.

### B. Plaintiff's Disability Discrimination claim raises a genuine dispute of material fact sufficient to survive a motion for summary judgment.

Plaintiff's complaint also claims that his termination constituted disability discrimination in violation of Ohio Revised Code § 4112 *et seq.* O.R.C. § 4112.02(A) makes it an unlawful discriminatory practice for an employer because of the disability of any person "to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person . . ." This statute is similar to the federal ADA, and Ohio courts are permitted to use the federal regulations and cases interpreting the federal statute. *See Columbus Civ. Serv. Comm. v. McGlone*, 82 Ohio St.3d 569, 573 (1998); *see also Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 201 (6th Cir. 2010). Accordingly,

disability claims brought under Ohio law may be evaluated concurrently and under the standards as claims brought under the ADA. *Id.*

To establish a prima facie case for disability discrimination a plaintiff must show: (1) he is disabled; (2) an adverse employment action was taken by an employer, at least in part, because he is disabled; (3) the employer knew of the disability; and (4) he can safely and substantially perform the essential functions of the job. *Hood v. Diamond Products, Inc.*, 74 Ohio St.3d 298, 302 (1996); *see also Whitfield v. Tennessee*, 639 F.3d 253, 259 (6th Cir.2011).

Once the plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to set forth some legitimate, nondiscriminatory reason for the action taken. *Hood*, 74 Ohio St.3d at 302. If a nondiscriminatory reason is proffered, the burden shifts back to the employee to show that the employer's stated reason was a pretext for impermissible discrimination. *Id.*

Defendants' motion for summary judgment does not challenge Plaintiff's prima facie case of discrimination. Defendants instead argue that there was a legitimate, nondiscriminatory reason to fire Plaintiff—namely, that his continued failure to submit timely expense reports over several years constituted a massive breach of the U.S. Bank Code of Ethics, which merits termination. (Doc. 31, at 23–26). Defendants' motion cites multiple decisions from courts within the Sixth Circuit holding that violation of a corporate credit card policy is a legitimate, nondiscriminatory reason for termination. (*Id.* at 24 (citing *Kepreos v. Alcon Labs., Inc.*, 520 Fed. Appx. 375 (6th Cir. 2013) (holding that the abuse of a company credit card that had been given to the employee to

cover legitimate business expenses was a legitimate nondiscriminatory reason to terminate an employee in a case alleging disability discrimination under Ohio Rev. Code 4112); *Carson v. Patterson Dental Supply, Inc.*, 2009 WL 4547592 (S.D. Ohio Dec. 2, 2009), affirmed by *Carson v. Patterson Cos.*, 423 F. App'x 510 (6th Cir. 2011) (holding that violation of company policy related to expense reports for a company credit card is a legitimate nondiscriminatory reason to terminate)). The Court finds these cases to be analogous to those cited by Defendant, and accordingly finds Plaintiff's violation of the U.S. Bank code of ethics to be a legitimate, nondiscriminatory reason for termination.

However, taking the facts of this case as put forward by Plaintiff, a reasonable jury could find that it was Defendants' conduct in refusing to provide Plaintiff a reasonable accommodation for his ADHD that resulted in his violation of the U.S. Bank Code of Ethics, and therefore his subsequent termination. The Sixth Circuit has held that employers can be responsible for the consequences of their failure to provide a reasonable accommodation. In *Talley v. Family Dollar Stores of Ohio, Inc*., 542 F.3d 1099, 1109 (6th Cir. 2009), the plaintiff, a cashier, suffered from degenerative osteoarthritis and could not stand for long periods of time without rest. Plaintiff acquired a note from her doctor stating that she needed to be able to use a stool during work to avoid standing for hours at a time. The plaintiff's employer ignored that note, and Plaintiff was forced to abandon her job and not report to work due to severe pain. The Sixth Circuit reversed the district court's grant of summary judgment to the defendant employer, holding that "the plaintiff has presented evidence sufficient from which a jury could find that her failure to return to work and eventual discharge was a foreseeable and

11

intended result of the company's action in refusing to allow her to use a stool and refusing to hold a meeting to resolve the issue." (*Id.* at 1109).

The facts of this case as alleged by Plaintiff are analogous to the facts from *Talley*. Like the defendant in *Talley*, Defendants in this case refused to implement a fairly simple mechanism for solving the problems arising from Plaintiff's disability—namely, allowing or requiring an administrative assistant to complete Plaintiff's expense reports with the email copies of important receipts rather than unnecessarily requiring paper receipts from Plaintiff. A reasonable juror, finding the facts as alleged by Plaintiff to be true, could find that, by refusing to complete Plaintiff's expense reports despite having all necessary receipts, Defendants caused the foreseeable and perhaps intended result of Plaintiff's failure to comply with the U.S. Bank Code of Ethics. Under these circumstances, it would not be unreasonable for a jury to find Defendants liable for disability discrimination.

Accordingly, Defendants' motion for summary judgment with regards to Plaintiff's claim of disability discrimination is denied.

### C. Plaintiff's claim of retaliation for requesting a disability accommodation raises a genuine dispute of material fact sufficient to survive a motion for summary judgment.

Plaintiff's complaint also claims that Defendants violated Ohio Revised Code § 4112, *et seq.*, by terminating his employment in retaliation for his request for an accommodation for his ADHD.

There are four elements Plaintiff must prove to establish a prima facie case of retaliation: (1) Plaintiff engaged in protected activity; (2) Plaintiff's protected activity

was known to Defendants; (3) Plaintiff suffered an adverse employment action; and (4) a causal link existed between the protected activity and the adverse action. *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000); *Fenton v. HiSAN Inc.*, 174 F.3d 827, 831 (6th Cir. 1999). None of the first three elements of a prima facie case for retaliation are in dispute.

The facts of this case, taken in the light most favorable to Plaintiff, would allow a jury to reasonably conclude that a causal connection existed between Plaintiff's request for an accommodation and his termination. While Plaintiff's problems with his employer began long before any official request for accommodation was made, the evidence demonstrates that there was an escalation of conflict between the parties immediately following Plaintiff's official request for accommodation for his ADHD in September 2010. Following this meeting, Defendants began using "significant event forms" to document all instances of communications regarding expense reports. (Docs. 26-9, 26-10, 26-12). Taking the facts as alleged by Plaintiff, a reasonable jury could look at the timeline of events in this case and determine that Defendants began laying the groundwork for Plaintiff's eventual termination once they learned about Plaintiff's disability and his request that Defendants accommodate that disability.

Even if Plaintiff can make a prima facie case of retaliation, Defendants can still prevail on Plaintiff's retaliation claim if they can demonstrate that they had a legitimate, nondiscriminatory reason for Plaintiff's termination and that the reason is not a pretext for retaliation. The Court has already held that Plaintiff's violation of the U.S. Bank Code of Ethics was a legitimate, nondiscriminatory reason for his termination. However,

as with Plaintiff's discrimination claim, a jury could reasonably find in Plaintiff's favor on his retaliation claim if they determined that Plaintiff's violation of the Code of Ethics was the foreseeable and intended consequence of Defendants' failure to accommodate Plaintiff's ADHD. The validity of Plaintiff's retaliation claim therefore cannot be determined prior to a jury's findings regarding key disputed facts.

Accordingly, Defendants' motion for summary judgment with respect to Plaintiff's claim of retaliation for his requesting an accommodation is denied.

### D. Plaintiff's FMLA interference claim is without merit.

In addition to his claim of his civil rights and retaliation claims, Plaintiff's complaint alleges that Defendants violated the Family and Medical Leave Act of 1993 (FMLA) by interfering with his right to take FMLA leave.

In August of 2013, Plaintiff spoke with two HR managers at U.S. Bank regarding his unsubmitted expense reports and how his ADHD was impacting his work. The HR managers recommended to Plaintiff that he take intermittent FMLA leave as an accommodation for his diagnosis. Plaintiff accordingly reached out to U.S. Bank's 3rd party FMLA administrator to inform them he would seek to take intermittent FMLA leave. Plaintiff never intended to take any sustained or significant or prolonged time off work; instead, the intermittent FMLA request was designed to facilitate Plaintiff's need to occasionally take off work and visit his doctor as necessary. (Doc. 26, at 30).

When Defendant Robert Kern learned that Plaintiff had contacted the FMLA administrator, Kern reached out to Plaintiff. According to Plaintiff, Kern requested that Plaintiff confirm that Plaintiff was taking leave so that Kern could hire another BDO to

14

cover for Plaintiff while Plaintiff was out. (Doc. 26-22). Plaintiff claims Kern stated he did not want anything to "slip" while Plaintiff was on leave. (*Id.*). Plaintiff informed Kern that he would only be taking leave on an intermittent basis, and that Plaintiff did not believe hiring another person to cover for him was necessary. (*Id.*). Nevertheless, according to Plaintiff, Kern reiterated that an additional salesperson would be hired if Plaintiff took FMLA leave. (*Id.*).

Plaintiff argues that by threatening to hire another salesperson if Plaintiff took FMLA leave, Robert Kern interfered with Plaintiff's right to take FMLA leave. 29 C.F.R. § 825.220(b), which describes various ways an employer can interfere with the exercise of an employee's FMLA rights, includes not only refusing to authorize FMLA leave, but "discouraging an employee from using such leave." *See also Starr v. Ebenezer Rd. Corp.*, 149 F. Supp. 3d 831, 837 (S.D. Ohio 2015) (FMLA prohibits actions that deter or actively discourage an employee from requesting or pursuing those rights).

However, in this case no reasonable juror could conclude that Robert Kern's actions as alleged by Plaintiff amounted to discouraging Plaintiff from taking FMLA leave. The FMLA does not prohibit an employer from hiring someone to cover for an employee while they are out on leave. *See* 29 U.S.C. § 2614. The FMLA only requires an employer to return the employee to their former position or an equivalent position with the same benefits, pay and other terms of employment. *Id.* Plaintiff does not allege that he was ever told that he would not have his same position regardless of whether he took FMLA leave. Defendants were within their rights to hire another individual to pick up any slack that would be generated by Plaintiff's FMLA leave. This is true even given

15

Plaintiff's assertion that his FMLA leave would have had no impact on his ability to fully perform his duties—so long as Defendants were not threatening to modify the terms of Plaintiff's employment (which by Plaintiff's admission they were not), Defendants were permitted to hire another employee in response to Plaintiff's application for FMLA leave.

Plaintiff cites *Hurtt v. International Services, Inc.*, a recent case from the Sixth Circuit, in support of his claim that Defendants discouraged his taking FMLA leave by indicating that they would hire another individual to pick up the slack. 627 F. App'x 414 (6th Cir. 2015). However, the facts of *Hurtt* are inapposite to the facts of this case. In *Hurtt*, the Sixth Circuit held that an employer had interfered with an employee's taking FMLA leave based on several modifications made to the employee's job status following the employee's submission of a leave request: (1) the employee's salary was terminated and he was placed on a commission only pay scale; (2) the employee's commission pay was backdated, which resulted in a deficit owed to the employer; (3) the employer terminated prepayment of the employee's travel expenses. *Id.* at 424. In this case, U.S. Bank did not threaten to make any such changes to Plaintiff's work responsibilities or compensation. Plaintiff states that he feared another employee would reduce the commissions Plaintiff could earn. This unspecified fear alone is not sufficient for a reasonable juror to find that Defendants were not permitted to hire another employee to make up for potential shortcomings caused by FMLA leave.

Accordingly, Defendants' motion for summary judgment on Plaintiff's claim of FMLA interference is granted.

### E. Plaintiff's FMLA retaliation claim is without merit.

Similarly to his FMLA interference claim, Plaintiff's FMLA retaliation claim is without merit. For a retaliation claim, a plaintiff must establish that: "(1) he was engaged in an activity protected by the FMLA; (2) the employer knew that he was exercising her rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to him; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action." *Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 556 (6th Cir. 2006).

Plaintiff has alleged no facts that would allow a reasonable juror to conclude that he was terminated in response to his engaging in protected activity under the FMLA. To establish a causal connection, Plaintiff must produce sufficient evidence for one to infer that Defendant would not have taken the adverse employment action had he not engaged in the protected activity. *See Id.* In other words, to establish the causal connection, Plaintiff must produce sufficient evidence from which an inference could be drawn that he would not have been terminated had he not moved for intermittent FMLA leave.

Plaintiff cannot produce such sufficient evidence here. The evidence in this case demonstrates that friction between Plaintiff and his employer had been developing long before Plaintiff even considered taking FMLA leave. While a jury could attribute the breakdown of the relationship between Plaintiff and Defendants to Defendants' failure to offer a reasonable accommodation for Plaintiff's ADHD, *see supra* Part III.A–C, there are no facts that would allow a reasonable conclusion that Plaintiff's termination was specifically in response to Plaintiff's initiating the process for taking intermittent FMLA

leave. The relationship between the parties had already significantly deteriorated by that point.

Accordingly, Defendant's motion for summary judgment on Plaintiff's FMLA retaliation claim is granted.

### IV. CONCLUSION

Accordingly, for these reasons:

1) Defendant's motion for summary judgment on Plaintiff's claim of interference with Plaintiff's rights under the FMLA (Count 1 of the complaint) is **GRANTED**;

2) Defendant's motion for summary judgment on Plaintiff's claim of retaliation in response to Plaintiff's exercising his rights under the FMLA FMLA (Count 2 of the complaint) is **GRANTED**;

3) Defendant's motion for summary judgment on Plaintiff's claim that Defendants failed to reasonably accommodate his disability (Count 3 of the complaint) is **DENIED**;

4) Defendant's motion for summary judgment on Plaintiff's claim that Defendants terminated Plaintiff's employment in retaliation for Plaintiff's request for a disability accommodation (Count 4 of the complaint) is **DENIED**;

5) Defendant's motion for summary judgment on Plaintiff's claim of disability discrimination (Count 5 of the complaint) is **DENIED**;

6) Plaintiff's Motion to Stay (Doc. 35) is terminated as moot.

**IT IS SO ORDERED.**

Date: 9/29/17

*Timothy S. Black*
Timothy S. Black
United States District Judge